UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NORTHERN JERSEY PLASTIC SURGERY
CENTER, LLC,

                              Plaintiff,

                                                          22-cv-6087 (PKC)

               -against-
                                                          OPINION
                                                          AND ORDER

1199SEUI NATIONAL BENEFIT FUND,

                              Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.:

               Plaintiff Northern Jersey Plastic Surgery Center, LCC (the "Center") brings this

action against defendant 1199SEUI National Benefit Fund (the "Fund" or "Benefit Fund"),

asserting various claims under the Employee Retirement Income Security Act of 1974

("ERISA") and New York state law.  The Center's amended complaint (the "Amended

Complaint") principally alleges that the Fund failed to reasonably compensate the Center for

healthcare services it rendered to a patient who is insured by the Fund (the "Patient").  (ECF 11.)

The Fund maintains that it properly reimbursed the Center in accordance with the terms of the

applicable ERISA plan and moves to dismiss the Amended Complaint in its entirety.  (ECF 12;

ECF 14.)  For the reasons that will be explained, the motion will be granted as to all claims.


FACTUAL BACKGROUND

               For purposes of this motion, the Court accepts the plaintiff's well-pleaded

allegations as true and draws all reasonable inferences in favor of the non-movant plaintiff.  See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007).

The Center is a limited liability company that is duly licensed to practice medicine and maintains its primary practice in New Jersey.  (ECF 11 ¶ 1.)  The Fund is an ERISA-governed health plan.  At the time of the Patient's procedure, the Fund's governing plan document was the Summary Plan Description in effect as of June 2015 (the "2015 SPD" or "Plan").  (ECF 13, Ex. A (hereinafter "2015 SPD").)[1]

The Fund allows members to seek healthcare services from either "participating providers" or "non-participating providers."  (2015 SPD at 58-61.)  Participating providers are independent practitioners who have a participation contract with the Fund and "accept the Benefit Fund's payment as payment in full for most services."  (Id. at 58.)  A non-participating provider does not have a participation contract with the Fund and is paid according to a "Schedule of Allowances."[2]  (Id. at 162.)  Here, the Center is a non-participating provider because it does not have an in-network contract with the Fund.  (ECF 11 ¶ 3.)

In order for the Fund to pay a member's claim (i.e., a member's request for payment or reimbursement for benefits) to a non-participating provider, the member must sign an assignment of benefits authorization giving the Fund consent to send payment to the provider.

---

[1] Because the Center relies heavily on the terms and effect of the 2015 SPD in its Amended Complaint, the 2015 SPD is integral to the Amended Complaint and the Court may take account of it on this motion.  Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (stating that a document is "integral" to a complaint where the complaint "relies heavily upon its terms and effect"); (ECF 11 ¶¶ 11, 16, 27, 58-59, 62-64, 66, 72-73, 76-78, 111-12, 114-15, 118, 122-23); see also Neurological Surgery, P.C. v. Aetna Health Inc. ("Neuro Surgery v. Aetna"), 511 F. Supp. 3d 267, 278 (E.D.N.Y. 2021) ("Courts routinely consider the health plans on motions to dismiss in similar cases."); Neurological Surgery, P.C. v. Travelers Co. ("Neuro Surgery v. Travelers"), 243 F. Supp. 3d 318, 325 (E.D.N.Y. 2017) ("When deciding a motion to dismiss, a court may consider . . . documents that are . . . integral to the allegations in the complaint, such as ERISA plan documents."); Steger v. Delta Airlines, Inc., 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005) (considering ERISA plan on motion to dismiss because it was "directly referenced in the complaint and is the basis of this action").
[2] The Schedule of Allowances is not in the record before the Court.

(2015 SPD at 162.)  The 2015 SPD warns that a member who uses a non-participating provider "can be billed the difference between the Benefit Fund's allowance and whatever the provider normally charges . . . . **which could result in a significant cost to [the member]**."  (Id. at 61; see also id. at 83 ("If you use a Non-Participating Provider, you could face high out-of-pocket costs.").)

The 2015 SPD also provides that members are required to obtain prior authorization in advance of certain services, including "[a]mbulatory surgery or inpatient admissions."  (Id. at 83.)  A prior authorization is a determination that that the service is considered "Medically Necessary," as that term is defined in the 2015 SPD.  (Id. at 83-84.)  The 2015 SPD states that "[a]uthorization of services **does not** mean a Non-Participating Provider will accept the Benefit Fund's payment as payment in full."  (Id. at 84.)

On June 26, 2019, the Center performed on the Patient what is described in the Amended Complaint as "breast reconstruction healthcare services," the "first stage of breast reconstruction," and a "procedure" or "procedures" (the "Procedure(s)").[3]  (ECF 11 ¶¶ 6, 10, 12, 17, 27, 46, 114.)  Prior to performing the Procedure(s), the Center received prior authorization from the Fund recognizing that the procedure was "Medically Necessary" (the "Preauthorization").  (Id. ¶ 9; ECF 13, Ex. B.)[4]  The Center also obtained from the Patient "an assignment of benefits in consideration of the health care services provided" (the "Assignment of Benefits").  (ECF 11 ¶ 3.)

The Amended Complaint alleges that, based on the Preauthorization, the Center expected reasonable compensation for the services rendered.  (Id. ¶¶ 9-10.)  It alleges that the

---

[3] The Center refers to the Procedure(s) as a "surgery" in the conclusion of its opposition memorandum of law but not in the Amended Complaint.  (ECF 15 at 24.)

[4] The Court may consider the Preauthorization, (ECF 13, Ex. B), because, like the 2015 SPD, it is "integral" to the Center's complaint.

Center submitted a claim to the Fund reflecting the "reasonable and/or customary charges for the healthcare services," totaling "no less than $146,868.00." (Id. ¶¶ 7, 13.)  The Center received $1,713.00 "in total from Defendant or the [P]atient" and alleges that "$145,155.00 remains due and owing." (Id. ¶ 14.)  The Center has demanded the remaining $145,155.00, but the Fund has not made any further payment. (Id. ¶¶ 14-15.)

The Center commenced this action in the Supreme Court of the State of New York, New York County, on June 20, 2022, by filing a Summons with Notice.  (ECF 1, Ex. A.)  The Fund timely removed the action from state court to this Court by Notice of Removal filed July 18, 2022.  (ECF 1.)  Asserting federal question jurisdiction, the Fund urged that adjudication of the Center's claims necessarily depends on "interpretation of the terms of [the Fund's] plan of benefits and a review of [the Fund's] determination of benefit claims under ERISA."  (Id.)  The Center did not seek remand.  The Court concludes that it has subject matter jurisdiction by reason of a federal question.  28 U.S.C. § 1331; 29 U.S.C. § 1132(e); see, e.g., Palmiotti v. Metropolitan Life Insurance Co., 423 F. Supp. 2d 288, 290 (S.D.N.Y. 2006); (Swain, J.); see also Nathaniel L. Tindel, M.D., LLC v. Excellus Blue Cross Blue Shield, 522-Civ-971, 2023 WL 3318489, at *5 (N.D.N.Y. May 9, 2023) ("[T]he complaint asserts causes of action under ERISA; there therefore is no question as to the Court's subject-matter jurisdiction and the Court need not analyze the state-law claims under the doctrine of complete preemption."); Chau v. Hartford Life Insurance Co., 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016) (Woods, J.) (same).

The Center filed the Amended Complaint on October 4, 2022, asserting ten claims for relief against the Fund.  (ECF 11.)  The first seven claims are New York common law claims for (1) breach of contract, (2) promissory estoppel, (3) breach of implied-in-fact contract,

(4) breach of contract based on the Assignment of Benefits, (5) breach of a third-party beneficiary contract, (6) unjust enrichment, and (7) quantum meruit.

The remaining three claims are brought under ERISA.  The Eighth Cause of Action alleges that the Fund violated ERISA § 502(a)(1)(B) by failing to compensate the Center in accordance with the Plan terms.  (Id. ¶¶ 106-119.)  The Ninth Cause of Action, brought under under ERISA § 502(a)(3), alleges that the Fund breached its fiduciary duty by reducing the payments for the Patient's surgery "to benefit itself at the expense of the patient."  (Id. ¶¶ 120-126.)  The Tenth Cause of Action, brought pursuant to ERISA § 502(c)(1), alleges that the Center requested the Fund's plan documents and the Fund failed to disclose them.  (Id. ¶¶ 127-131.)

DISCUSSION

I.      Legal Standard on a Rule 12(b)(6) Motion

Rule 12(b)(6), Fed. R. Civ. P., requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  A sufficient complaint must include non-conclusory factual allegations that move its claims "across the line from conceivable to plausible."  Id. at 680.

In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  Id. at 678.  Instead, the Court

must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll International, 231 F.3d 82, 86 (2d Cir. 2000)).

"A motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint. The test of a claim's 'substantive merits' is 'reserved for the summary judgment procedure, governed by [Rule] 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule.'" Goel, 820 F.3d at 558-59 (quoting Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)) (citation omitted).

The Court will first address the Center's three federal claims brought under ERISA before addressing its state law claims.

II.     The Eighth Claim: ERISA § 502(a)(1)(B)

ERISA § 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The Center's eighth claim for relief alleges that the Fund failed to reimburse the Center for the Patient's procedure in accordance with the terms of the Plan.

Specifically, the Amended Complaint alleges that the "health insurance policies at issue in this case . . . includ[e] provisions stating that out-of-network providers would be paid the reasonable charges for the services provided," and that the Fund violated its "statutory and plan obligations" by "substituting its own arbitrary standard" to calculate payment to the Center. (ECF 11 ¶¶ 114-15.)  It alleges that the reasonable charges for the services provided to the Patient are not less than $146,868.00, but the Fund has only paid $1,713.00.  (Id. ¶ 116.)

The Center asserts that it has standing to bring this claim "on its own behalf" and on behalf of the Patient by virtue of the Assignments of Benefits.  (Id. ¶ 107.)  The Center does not have standing to assert this claim "on its own behalf" but, as discussed below, has standing to assert the claim on behalf of the Patient.  ERISA expressly provides that only "a participant or beneficiary" may bring a section 502(a)(1)(B) claim.  The Second Circuit has clarified that the term beneficiary, "as it is used in ERISA, does not without more encompass healthcare providers" like the Center.  Rojas v. Cigna Health & Life Insurance Co., 793 F.3d 253, 257 (2d Cir. 2015).

However, the Second Circuit has recognized a "narrow exception to the ERISA standing requirements" that "grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care."  Simon v. General Electric Co., 263 F.3d 176, 178 (2d Cir. 2001) (citing I.V. Services of America, Inc. v. Trustees of American Consulting Engineers Council Insurance Trust Fund, 136 F.3d 114, 117 n.2 (2d Cir. 1998)).  Because the Center has plausibly alleged that it received the Assignment of Benefits from the Patient, (ECF 11 ¶¶ 3, 20-21, 107), as is permitted by the 2015 SPD, (see, e.g., 2015 SPD at 162), the Center has standing to bring its section 502(a)(1)(B) claim for recovery of benefits as the Patient's assignee.

7

Nonetheless, the claim must be dismissed because the Center fails to allege that it exhausted the administrative remedies required by the 2015 SPD and because the Center fails to state a plausible claim for relief under section 502(a)(1)(B).

> ### A. The Center Has Failed to Allege It Exhausted the Administrative Remedies Required by the Plan.

While ERISA does not contain a statutory exhaustion requirement, the Second Circuit has recognized a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." Paese v. Hartford Life & Accident Insurance Co., 449 F.3d 435, 443 (2d Cir. 2006) (quoting Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993)). "[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." Kennedy, 989 F.2d at 594.

Failure to exhaust administrative remedies is an affirmative defense that the defendant has the burden to prove. Paese, 449 F.3d at 446; Neuro Surgery v. Aetna, 511 F. Supp. 3d at 295. "[A]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F. 3d. 67, 74 (2d Cir. 1998). In the ERISA context, the failure to exhaust "appears on the face of a complaint where, for example, . . . plaintiff 'pleads no facts suggesting any effort to exhaust the remedies available through his ERISA administrative plan.'" Neuro Surgery v. Aetna, 511 F. Supp. 3d at 296 (citations omitted) (emphasis removed) (quoting Abe v. New York University, 14-Civ-9323, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (Sullivan, J.)). Courts in this Circuit "routinely dismiss ERISA claims . . . on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." Abe, 2016 WL 1275661, at *5; Neuro Surgery v. Aetna, 511 F. Supp. 3d at 296 (collecting cases).

Section VII.B of the 2015 SPD sets forth the administrative appeals process that must be exhausted prior to bringing suit against the Fund.  (2015 SPD at 167-71.)  It states that if a member's claim or request for benefits is denied, "the Plan provides for two levels of appeals." (Id. at 167.)  In non-urgent care situations, the first step is to request in writing "an Administrative Review of such denial within 180 days after the receipt of the denial notice." (Id.)  If the Administrative Review results in a denial, the second step is to appeal to "1199SEUI CareReview" by written request within 60 days of the receipt of the denial notice.  (Id.)  If a member's second-level appeal is denied by 1199SEUI CareReview, the member has the right to file an ERISA action in a federal court in New York City.  (Id.)  The member may also choose to first bring a third and final appeal to the Appeals Committee of the Board of Trustees, by written request within 60 days of receiving the denial notice.  (Id.)

The 2015 SPD specifies that all claims by participants and beneficiaries against the Fund "are subject to the Claims and Appeals Procedure" set forth therein and that "[n]o lawsuits may be filed until all steps of these procedures have been completed and the benefits requested have been denied in whole or in part."  (Id.)  It also explains that non-participating providers "do not have an independent right to appeal an adverse benefit decision."  (Id. at 169.) If a member assigns their right to benefit payments to a non-participating provider and authorizes that provider to appeal on their behalf, "the provider will 'stand in [their] shoes' in the appeal, and will have no greater rights" than the member has under the Plan.  (Id.)

The Amended Complaint does not plausibly allege that the Center exhausted the administrative remedies required by the 2015 SPD before it initiated this action.  It merely alleges that "[t]o the extent necessary, Plaintiff has exhausted all applicable administrative remedies and/or other contractual preconditions outlined in the applicable healthcare policies,"

including "appealing adverse determinations (multiple levels and peer to peer review, where appropriate)." (ECF 11 ¶ 21.)  It later refers to "appeals from Plaintiff of adverse determinations (denials or partial payments)," "the first level member appeal," and "Plaintiff's second level appeal." (Id. ¶¶ 23, 129-30.)

These conclusory allegations, unaccompanied by any factual support, are insufficient.  "It is well established that ERISA complaints containing bald assertions that administrative remedies have been exhausted do not withstand a 12(b)(6) motion." Kesselman v. The Rawlings Co., LLC, 668 F. Supp. 2d 604, 609 (S.D.N.Y. 2009) (Jones, J.); Neuro Surgery v. Aetna, 511 F. Supp. 3d at 294 (concluding plaintiff's "mere conclusory statements without any plausible factual allegations in support" were insufficient to allege that it had exhausted its administrative remedies).  In Kesselman, for example, the court found insufficient the plaintiffs' allegation "that all conditions precedent including the exhaustion of administrative remedies to maintaining this action have been performed or have occurred or are futile." 668 F. Supp. 2d at 609.  And in Neuro Surgery v. Aetna, the court explained that the complaint lacked a basis to reasonably infer what the appeals procedure required, whether the plaintiff followed that procedure, when the appeal was taken, and when the appeal was decided.  511 F. Supp. 3d at 294; see also Professional Orthopaedic Associates, PA v. 1199 National Benefit Fund, 16-Civ-4838, 2016 WL 6900686, at *5 (S.D.N.Y. Nov. 22, 2016) (concluding that non-participating providers failed to allege exhaustion of remedies because "they [did] not allege that they mailed their 'appeal letters' to the address specified by the Plan"), aff'd sub nom. Professional Orthopaedic Associates, PA v. 1199 National Benefit Fund, 697 F. App'x 39 (2d Cir. 2017) (summary order).

Similarly, here, the Center has not alleged that it filed a first-level appeal within the 180-day timeframe set forth in the 2015 SPD, that it filed a second-level appeal within the 60-day timeframe, that any second-level appeal was made to 1199SEUI CareReview, that any such appeals were made in writing, and that such appeals were denied and if so, when.  Because the Amended Complaint fails to plead any facts showing that it complied with the administrative appeals process set forth in the 2015 SPD before commencing this action, the Court concludes that the Center's section 502(a)(1)(B) claim must be dismissed for failure to allege exhaustion of administrative remedies.[5]

B. The Center's Allegations Fail to State
   a Claim Under Section 502(a)(1)(B).

Even if the Center had plausibly alleged that it exhausted the administrative remedies required by the 2015 SPD, it fails to state a claim for relief under section 502(a)(1)(B).

The parties agree that to state a claim for recovery of benefits under section 502(a)(1)(B), a plaintiff must allege that "(1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan."  Guerrero v. FJC Security Services Inc., 423 F. App'x 14, 16 (2d Cir. 2011) (summary order) (citing Giordano v. Thomson, 564 F.3d 163, 168 (2d Cir. 2009)); (ECF 14 at 13; ECF 15 at 10).  Only the third element is disputed.  The Fund argues that the Center has failed to sufficiently plead that it was wrongfully denied a plan benefit because it has not identified any specific plan provision with which the Fund failed to comply.  (ECF 14 at 14.)

---

[5] Although "[c]ourts will waive the exhaustion requirement if the Plaintiff makes a 'clear and positive showing' that pursuing available administrative remedies would be futile," the Center has not alleged futility.  See Thomas v. Verizon, 02-Civ-3083, 2004 WL 1948753, at *4 (S.D.N.Y. Sept. 2, 2004) (Casey, J.), aff'd, 04-5232CV, 2005 WL 3116752 (2d Cir. Nov. 22, 2005) (summary order); Jones v. UNUM Life Insurance Co. of America, 223 F.3d 130, 140 (2d Cir. 2000).

The Second Circuit has explained that a claim under § 502(a)(1)(B), "in essence, is the assertion of a contractual right."  Feifer v. Prudential Insurance Co. of America, 306 F.3d 1202, 1210 (2d Cir. 2002).  Accordingly, "a plaintiff must refer to the plan itself to establish its right to relief under Section 502(a)(1)(B)."  Anjani Sinha Medical P.C. v. Empire HealthChoice Assurance, Inc., 21-Civ-138, 2022 WL 970771, at *3 (E.D.N.Y. Mar. 31, 2022) (citing Professional Orthopaedic Associates, 2016 WL 6900686, at *6).  "[A]t a minimum," a plaintiff asserting a section 502(a)(1)(B) claim must plead "the existence of plan terms that [d]efendants breached or failed to implement."  Michael E. Jones M.D., P.C. v. UnitedHealth Group, Inc., 19-Civ-7972, 2020 WL 4895675, at *3 (S.D.N.Y. Aug. 19, 2020) (Caproni, J.).

The Center has not done so here.  It has failed to identify any provision of the 2015 SPD that entitles it to the amount demanded or any provision that the Fund allegedly violated.  The Center alleges that the Fund did not follow Plan "provisions stating that out-of-network providers would be paid the reasonable charges for the services provided to Defendant's insured."  (ECF 11 ¶¶ 114-15.)  But it does not identify where such provisions can be found in the 2015 SPD, and the 2015 SPD itself belies the Center's allegations.

Section VII.D of the 2015 SPD, titled "What Is Not Covered," states that the Fund does not cover "[c]harges that are unreasonable, excessive or that are beyond a provider's normal billing rate or beyond his or her scope or specialty."  (2015 SPD at 173-74.)  But this provision does not suggest that the inverse is true, i.e., that charges are covered so long as they are reasonable.  The same section also explains that "[c]harges in excess of the Benefit Fund's Schedule of Allowances" are not covered.  (Id. at 173.)  And, as described previously, the 2015 SPD provides that non-participating providers will be paid according to the "Schedule of Allowances," and that members may face significant out-of-pocket costs reflecting the difference

12

between the Fund's allowance and a provider's charges.[6]  (<u>Id.</u> at 61, 83, 162.)  Further, the

definitions section of the 2015 SPD defines "Eligible Charges" as "[t]he maximum amount that

the Benefit Fund recognizes as a reasonable charge for the service rendered, as set forth in the

Benefit Fund's Schedule of Allowances."  (<u>Id.</u> at 191.)  The Amended Complaint ignores these

limitations on payments to non-participating providers.

        Courts in this Circuit have dismissed similarly defective claims that failed to

identify a provision of the applicable plan documents entitling the plaintiff to the relief sought.

<u>Professional Orthopaedic Associates</u>, 697 F. App'x at 41 (concluding plaintiff failed to state a

plausible claim for relief under section 502(a)(1)(B) where the complaint alleged that the

defendant, the 1199SEIU National Benefit Fund, was required to pay the "usual, customary and

reasonable rates" for services rendered by out-of-network providers but "fail[ed] to identify any

provision in the plan documents requiring the Fund to pay such rates"); <u>Anjani Sinha</u>, 2022 WL

970771, at *3 (dismissing section 502(a)(1)(B) claim that alleged the defendant was required to

pay the "usual and customary health care costs incurred" by the patient but did "not reference

any plan provisions at all" requiring the defendant to pay such rates); <u>Long Island Neurological</u>

<u>Associates, P.C. v. Empire Blue Cross Blue Shield</u>, 18-Civ-3963, 2020 WL 1452521, at *5

(E.D.N.Y. Mar. 2, 2020), <u>report and recommendation adopted</u>, 2020 WL 1452465 (E.D.N.Y.

Mar. 25, 2020) (dismissing claim for "full payment under the terms of the [p]lan" because the

plaintiff "fail[ed] to point to a [p]lan provision that requires the relief sought, <u>i.e.</u>, payment in

full"); <u>Michael E. Jones</u>, 2020 WL 4895675, at *3 (dismissing section 502(a)(1)(B) claim

because "there are no well-pleaded allegations as to any plan terms that Defendants may have

---

[6] In contrast to the provisions governing payment to non-participating providers, the 2015 SPD expressly provides
that it covers "reasonable" costs for medically necessary services in certain hospital care situations and emergency
department visits at non-participating hospitals.  (2015 SPD at 67-68, 70, 144.)

violated" and where "[t]he only pertinent allegation [was] [p]laintiff's 'information and belief' that 'the . . . [d]efendants have [a certain] obligation pursuant to the [applicable plans] and/or applicable law").

   In light of these cases, the Court is not persuaded by the Center's argument that it need not plead a specific Plan provision because Rule 8, Fed. R. Civ. P., only requires a "short and plain statement of the claim" sufficient to put the Fund on notice.  (ECF 15 at 10.)  The Center relies on a memorandum and order in Neurological Surgery, P.C., v. Oxford Health Plans (NY), Inc., found only on ECF, that stated an ERISA plaintiff does "not need to cite specific portions of individual [p]atients' plan documents to satisfy Rule 8(a)(2)."  18-Civ-00560, ECF 65 at 8 (E.D.N.Y. Oct. 30, 2020).  But that decision denied the defendant's motion to dismiss pursuant to Rule 8; it did not address whether identifying specific portions of plan documents is necessary to state a plausible claim for relief under section 502(a)(1)(B) and to satisfy Rule 12(b)(6).  See Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted.").

   The Center further argues that it has stated a claim for relief under section 502(a)(1)(B) because it has alleged that the Center's "network was inadequate and did not have a participating provider available to perform the medically necessary services at issue."  (ECF 15 at 12.)  In its opposition memorandum of law but not in the body of its Amended Complaint, the Center invokes N.Y. Insurance Law § 3241, which generally requires a health insurer to maintain a network of participating providers adequate to the needs of its members.  The Amended Complaint alleges in a conclusory manner that there were no adequate participating providers that could perform the "highly complex" Procedure(s), which required a "high[ly] trained and

competent surgeon."  (ECF 11 ¶ 12.)  Nothing about the allegations as to the nature of the

services ("medically necessary breast reconstruction healthcare services"), (id. ¶ 6), renders the

conclusory allegation plausible.  But that aside, the Center cites no case law for the proposition

that a breach of an insurer's duty under section § 3241 would give rise to a private claim for

reimbursement of whatever charges are tendered by a non-participating provider.  In essence, the

Center seeks to negate the Schedule of Allowances set forth in the governing ERISA Plan.

There is simply no support under ERISA or controlling authority for such a proposition.

Further, as discussed in greater detail below, the 2015 SPD permits members to

assign their benefits to non-participating providers, but prohibits the assignment of the right to

assert claims against the Fund:

> The assignment feature of the Benefit Fund is only for payment of
> your benefits to providers.  No other rights may be assigned or
> transferred.  There is no further liability for any claim by any
> provider or third party and no such claims may be brought against
> the Benefit Fund.

(2015 SPD at 162; see also id. at 169, 189.)  The Center cites no support for the proposition that

an assignee of the right to reimbursement of benefits has standing to pursue a challenge under

state insurance law with respect to the adequacy of the Plan's overall network of participating

providers.[7]

### III.   The Ninth Claim: ERISA § 502(a)(3)

The Center's ninth claim for relief pursuant to ERISA section 502(a)(3) alleges

that the Fund violated its fiduciary duty under ERISA by reducing payments for the Procedure(s)

---

[7] In an earlier submission, the Fund described itself as a "self-funded, ERISA plan" and stated that it "is not an insurer, and indeed, Plaintiff asserts no causes of action under state insurance law."  (ECF 7.)  The Center's Amended Complaint describes the Fund as an insurer but makes no claim under New York Insurance Law.

at the expense of the Patient.  (ECF 11 ¶¶ 120-26.)  This claim will be dismissed because the Center does not seek equitable relief as is required by section 502(a)(3), lacks standing to bring a section 502(a)(3) claim, and fails to allege any facts supporting an inference that the Fund breached a fiduciary duty.

A.  The Center Does Not Properly Seek Equitable Relief.

ERISA § 502(a)(3) provides that "a participant, beneficiary, or fiduciary" may bring a civil action either "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  The United States Supreme Court has described section 502(a)(3) as a "catchall" provision "offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).  "[R]elief under section 502(a)(3) must be 'equitable.'"  Coan v. Kaufman, 457 F.3d 250, 262 (2d Cir. 2006).

The Center's section 502(a)(3) claim seeks "the unpaid benefits and interest from the date [the Patient's] claims were originally submitted to Defendant, together with attorneys' fees, costs, prejudgment interest and other appropriate relief."  (ECF 11 ¶ 126.)  The Fund urges that the Center seeks money damages, which cannot be obtained under section 502(a)(3).  (ECF 14 at 19.)  The Center concedes that "the claim seeks monetary damages," but argues that "the Amended Complaint as a whole demonstrates that the claim seeks equitable damages in the form of ordering Defendant to reasonably compensate Plaintiff as a result of Defendant's insufficient network."  (ECF 15 at 15.)  This argument is unavailing.

The Supreme Court has construed section 502(a)(3)(B) to "authorize only those categories of relief that were typically available in equity." Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 361 (2006) (quotations omitted) (emphasis removed) (quoting Mertens v. Hewitt Associates, 508 U.S. 248, 256 (1993)); see also CIGNA Corp. v. Amara, 563 U.S. 421, 440-42 (2011) (concluding that the injunctions, reformation of plan terms, and estoppel and surcharge remedies ordered by the district court properly "[fell] within the scope of the term 'appropriate equitable relief' in § 502(a)(3) because they "resemble[d] forms of traditional equitable relief"). Accordingly, in Mertens, the Supreme Court held that a section 502(a)(3) claim was legal, not equitable, because it sought "nothing other than compensatory damages" and money damages are "the classic form of legal relief." 508 U.S. at 255. In later cases, the Supreme Court clarified that "money damages are unavailable under section 502(a)(3) when the plaintiff does not seek to recover a particular fund from the defendant." Coan, 457 F.3d at 263 (quotations and citation omitted); Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 213-14 (2002) (holding that the kind of restitution sought was legal, not equitable, because the petitioners sought "the imposition of personal liability for the benefits that they conferred upon respondents" rather than "the imposition of a constructive trust or equitable lien on particular property"); Sereboff, 547 U.S. at 363 (concluding relief sought was equitable because plaintiff sought to "recover a particular fund from the defendant").

The Center's ninth claim plainly seeks compensatory money damages, rather than any relief typically available in equity, and it does not to seek to recover any "particular fund" of the defendant's. Accordingly, it does not seek "appropriate equitable relief" under section 502(a)(3) and must be dismissed. See, e.g., Frommert v. Conkright, 433 F.3d 254, 270 (2d Cir. 2006) ("While the plaintiffs seek to expand the nature of their claim by couching it in equitable

terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available."); Gerosa v. Savasta & Co., 329 F.3d 317, 321 (2d Cir. 2003) (concluding that section 502(a)(3) plaintiff's request for an "order directing 'defendants to reimburse the plaintiffs for the shortfall the Pension Fund will experience as a result of defendants' violation of their duties under ERISA'" sought consequential damages rather than equitable relief); Rubin-Schneiderman v. Merit Behavioral Care Corp., 193 F. App'x 70, 71 (2d Cir. 2006) (summary order) (affirming dismissal of section 502(a)(3) claim that sought compensatory monetary damages); Fehn v. Group Long Term Disability Plan for Employees of JP Morgan Chase Bank, 07-Civ-8321, 2008 WL 2754069, at *4 (S.D.N.Y. June 30, 2008) (Conner, J.) (counterclaimant failed to state a claim under section 502(a)(3) where it sought recovery of "money for a benefit plaintiff received, but it [could] not assert title or right to possession of particular property"); Union Labor Life Insurance Co. v. Olsten Corp. Health & Welfare Benefit Plan, 617 F. Supp. 2d 131, 135-36 (E.D.N.Y. 2008) (plaintiff's section 502(a)(3) claim did not seek equitable relief because it "failed to identify any particular fund in defendants' possession, distinct from its general assets, from which it seeks to be reimbursed"); Hall v. Kodak Retirement Income Plan, 07-Civ-6169, 2008 WL 788577, at *5-6 (W.D.N.Y. Mar. 20, 2008) (same); Pelosi v. Schwab Cap. Markets, L.P., 462 F. Supp. 2d 503, 513-14 (S.D.N.Y. 2006) (Marrero, J.) (concluding that plaintiff's claim, though characterized as one for "equitable enforcement" was "clearly one seeking money damages for the benefits he believes were improperly withheld in violation of [d]efendants' legal duties to him"); Wagner v. Metropolitan Life Insurance Co., 08-Civ-11284, 2011 WL 2638143, at *18 (S.D.N.Y. Feb. 28, 2011), report and recommendation adopted, 08-Civ-11284, 2011 WL 2623390 (S.D.N.Y. July 1, 2011) (Daniels, J.) (concluding that "plaintiff's breach of fiduciary duty claims under ERISA

Section 502(a)(3) do not seek appropriate equitable relief, because her claims seek the recovery of [p]lan benefits and/or damages, i.e., money," and noting that plaintiff did not seek "the imposition of a constructive trust or equitable lien" or "allege that she is the true owner of segregated, identifiable funds in [the defendants'] possession").

> B.  The Center Lacks Standing to Bring a Section 502(a)(3) Claim.

Even if the Center's claim sought appropriate equitable relief, it would nonetheless be dismissed because the Center lacks standing to assert a section 502(a)(3) claim.

The Amended Complaint alleges that the Center has standing to pursue its section 502(a)(3) claim "on its own behalf and on behalf of its patient by virtue of the assignments of benefits Plaintiff has received from its patient."  (ECF 11 ¶ 121.)  The Center appears to have abandoned its position that it has standing to sue on its own behalf, as its opposition to the Fund's motion asserts only that it brings this claim "under a valid assignment of benefits."  (ECF 15 at 14.)  For avoidance of doubt, the Center does not have standing to bring a section 502(a)(3) claim on its own behalf because the statute expressly provides that only "a participant, beneficiary, or fiduciary" may bring such a claim.  As explained above with respect to section 501(a)(1)(B), the term beneficiary "does not without more encompass healthcare providers" like the Center.  Rojas, 793 F. 3d at 257.

The Center also does not have standing to bring this claim as the Patient's assignee.  As previously stated, there is a "narrow exception to the ERISA standing requirements" that "grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care."  Simon, 263 F.3d at 178 (citing I.V. Services of America, 136 F.3d at 117 n.2).  The Center urges that it has standing to bring this claim as the Patient's assignee because it received the Assignment of Benefits from her.  The Fund contends

19

that although the Patient assigned her <u>benefits</u> to the Center, she was not permitted under the 2015 SPD to assign her <u>right to assert claims</u> against the Fund (other than a claim for recovery of benefits).  (ECF 14 at 18.)  The Court agrees.

A plaintiff asserting an ERISA claim as an assignee "must establish the existence of a valid assignment that comports with the terms of the" applicable plan.  <u>Neuroaxis Neurosurgical Associates, PC v. Costco Wholesale Co.</u>, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (Cote, J.).  "[W]here plan language unambiguously prohibits assignment, an attempted assignment will be ineffectual.  Thus, a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA."  <u>Id.</u> at 351-52 (citations omitted); <u>see also McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc.</u>, 857 F.3d 141, 147 (2d Cir. 2017) (concluding a provider's acceptance of an assignment was "ineffective—a legal nullity" because the health care plan at issue contained an anti-assignment provision).

Additionally, the Second Circuit has explained that "[n]ot all ERISA assignments convey the same rights."  <u>Rojas</u>, 793 F.3d at 258.  For example, as here, "an assignment may give the assignee the right to bring only a claim for benefits, but not a claim for breach of fiduciary duty."  <u>Id.</u> (citing <u>Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.</u>, 770 F.3d 1282, 1292 (9th Cir. 2014) ("Because [the provider] was assigned only the right to bring claims for payment of benefits, [the provider] has no right to bring claims for breach of fiduciary duty.")).

In <u>Rojas</u>, the Second Circuit held that the plaintiff healthcare provider lacked standing to bring an ERISA anti-retaliation claim under section 502 because "[t]he assignments allegedly executed by the patients . . . confer[red] to [the provider] <u>only</u> the right to pursue the

participants' claims for payment, not other categories of ERISA claims." Id. at 258.  Similarly, in Neuro Surgery v. Aetna, the plaintiff provider lacked standing to bring its ERISA causes of action where the relevant anti-assignment provision stated, "The employee may not assign his or her right to take legal action under the contract to such provider."  511 F. Supp. 3d at 283-84. That provision, the court concluded, "may not work to prevent assignments of the right to reimbursement, but it bars Plaintiff from bringing suit under the ERISA plan for a violation thereof."  Id.  And in Neuro Surgery v. Travelers, the plaintiffs lacked standing to pursue their ERISA claims in light of plan provisions that "unqualifiedly and unambiguously bar[red] a [p]lan member or beneficiary from assigning his right to sue to an out-of-network provider or anyone else."  243 F. Supp. 3d at 325, 329-30; see also MC1 Healthcare, Inc. v. United Health Group, Inc., 17-Civ-01909, 2019 WL 2015949, at *5 (D. Conn. May 7, 2019) (agreeing with defendant United Health Group, and relying on Rojas to conclude, that "even if the Assignment of Benefits form is a legal assignment of the right to payment [for services rendered] and the right to sue under ERISA for non-payment, it does not encompass the right to pursue injunctive relief" under section 502), on reconsideration in part, 17-Civ-01909, 2019 WL 3202965 (D. Conn. July 16, 2019) (concluding motion to reconsider was moot with respect to the ERISA section 502 claim).

Here, the 2015 SPD permits an assignment of benefits to a non-participating provider but unambiguously prohibits the assignment of the right to assert claims against the Fund:

> The assignment feature of the Benefit Fund is only for payment of your benefits to providers.  No other rights may be assigned or transferred.  There is no further liability for any claim by any provider or third party and no such claims may be brought against the Benefit Fund.

(2015 SPD at 162; see also id. at 169, 189.)  Although, as the Center notes, the Court "does not

have the assignments of benefits in the record," the unambiguous anti-assignment language in

the 2015 SPD establishes that the Center could not have received a valid assignment of the right

to pursue ERISA claims against the Fund.

    The Center alleges that the Fund has "accepted the assignment of benefits" or

"waived any anti-assignment language by virtue of accepting the applicable assignments [and]

not challenging the assignment, accepting the claims from Plaintiff, accepting appeals from

Plaintiff of adverse determinations (denials or partial payments), and allowing Plaintiff to

challenge and discuss the benefit calculations or analyses."  (ECF 11 ¶ 23; see also id. ¶ 22.)  It

urges that waiver is an issue of fact that would be inappropriate to adjudicate at this stage.  (ECF

15 at 15 (citing Neuroaxis Neurosurgical Associates, PC v. Aetna Health, Inc., 919 F. Supp. 2d

345 (S.D.N.Y. 2013) (Cote, J.), reh'g granted sub nom., Neuroaxis Neurosurgical Associates, PC

v. Aetna Health, Inc., 11-Civ-08350, ECF 62 (S.D.N.Y. March 22, 2013)).)

    To the contrary, courts in this Circuit have repeatedly rejected similar waiver

arguments by plaintiff providers at the motion to dismiss stage.  Waiver requires a "clear

manifestation of an intent . . . to relinquish [a] known right" and does not arise from "mere

silence, oversight or thoughtlessness."  Neuro Surgery v. Aetna, 511 F. Supp. 3d at 285 (quoting

Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d

573, 585 (2d Cir. 2006)).  "Mere silence regarding [an] anti-assignment provision[] does not

constitute a waiver of those provisions."  Neuro Surgery v. Travelers, 243 F. Supp. 3d at 330.  As

such, courts have rejected waiver arguments premised upon partial or direct payments to

providers, direct communications between the parties, and a defendant's failure to object to an

attempted assignment, including during an appeals process.  See, e.g., id. ("[D]irect payment [to

provider] would not constitute a waiver of the provisions unequivocally preventing a [p]lan member / beneficiary from assigning to any third party his right to sue."), <u>Neuro Surgery v. Aetna</u>, 511 F. Supp. 3d at 286-87 (direct payment to plaintiff provider over the course of several years did not waive anti-assignment provision); <u>Farkas v. UFCW Loc. 2013 Health & Welfare Fund</u>, 17-Civ-2598, 2018 WL 5862741, at *2 (E.D.N.Y. Sept. 12, 2018) (defendant's one-time partial reimbursement did "not evidence an intentional waiver of an otherwise explicit anti-assignment provision"); <u>Sasson Plastic Surgery, LLC v. Unitedhealthcare of New York, Inc.</u>, 17-Civ-1674, 2022 WL 2664355, at *2-3 (E.D.N.Y. Apr. 26, 2022) (rejecting "historically unsuccessful argument that [the defendant's] conduct, including its alleged payments to [the plaintiff provider], amounted to a waiver of the anti-assignment provisions"); <u>Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.</u>, 13-Civ-6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) (Griesa, J.) ("Plaintiffs' argument is simply another way of re-arguing that defendants waived the anti-assignment provision by making direct payments to plaintiffs—an argument courts have repeatedly rejected."); <u>Superior Biologics NY, Inc. v. Aetna, Inc.</u>, 20-Civ-5291, 2022 WL 4110784, at *10 (S.D.N.Y. Sept. 8, 2022) (Karas, J.) (rejecting argument that defendant waived anti-assignment provisions by virtue of its "silence regarding the anti-assignment provisions during the claims processing or appeals process, [its] direct communication with [p]laintiff before its provision of service and during the processing and payment of claims, and its allowance of [p]laintiff to submit claims on behalf of its patients").

Although some courts in this Circuit have held that payment to a provider constituted waiver of an anti-assignment provision, those cases involved a "long-standing pattern and practice of direct payment" – such facts are not alleged here.  <u>See Neuroaxis Neurological Associates, PC v. Cigna Healthcare of New York, Inc.</u> ("<u>Neuroaxis v. Cigna</u>"), 11-Civ-8517,

2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012) (Jones, J.); Biomed Pharmaceuticals, Inc. v.
Oxford Health Plans (N.Y.), Inc., 10-Civ-7427, 2011 WL 803097, at *5 (S.D.N.Y. Feb. 18,
2011) (Rakoff, J.) (concluding plaintiff had statutory standing to pursue claim for reimbursement
in light of an ambiguous assignment of benefits provision and the defendant's "long-term pattern
and practice of accepting and paying on [the plaintiff's] direct billing"); see also Neuro Surgery
v. Aetna, 511 F. Supp. 3d at 287 ("In the past ten years only two courts in the Second Circuit
have held that a 'long-standing pattern and practice of direct payment . . . suffic[es] to show
[defendant's] consent to [plaintiff's] assignments,' and both of those cases pre-date McCulloch."
(alterations in original)); Farkas, 2018 WL 5862741, at *2 (distinguishing Neuroaxis v. Cigna
and Biomed Pharmaceuticals).

      The allegations in the Amended Complaint are based solely on the Fund's mere
silence and inaction with respect to the 2015 SPD's anti-assignment language and thus cannot
support a finding of intentional waiver.[8]  The Center therefore lacks standing to pursue its
section 502(a)(3) claim, and the claim must be dismissed.  As noted below, the same conclusion
applies to the Center's section 502(c)(1) claim.

[8] The Center relies on an order in Neuroaxis Neurosurgical Associates, PC, v. Aetna Health, Inc. ("Neuroaxis v. Aetna"), 11-Civ-8756, found only on ECF, in arguing that the Court should not decide the issue of waiver at the motion to dismiss stage.  (See ECF 15 at 15-16.)  In that case, Neuroaxis argued that Aetna waived the relevant anti-assignment provisions based on its failure to object to the assignment despite making direct payments to Neuroaxis, engaging in communications with Neuroaxis regarding the claim, services provided, and appeals process, and its practice of only making direct payments to out-of-network providers when it had been advised there was assignment.  Neuroaxis v. Aetna, 11-Civ-8756, ECF 49, at 8-9.  The court allowed discovery on the issue of whether Aetna waived any anti-assignment clauses because there was "insufficient evidence in the record for the Court to conclude as a matter of law whether or not the defendants waived enforcement of the anti-assignment provisions in the [p]lans."  Id., ECF 58, at 2.  This Court declines to follow this unpublished order in light of the numerous cases rejecting similar waiver arguments on motions to dismiss.

C.  The Center Fails to State a Claim
    for Relief Under Section 502(a)(3).

Finally, the ninth claim must also be dismissed because the terms of the Plan

negate the Center's standing to assert a breach of fiduciary duty claim and because it fails to

plausibly allege a claim for relief under section 502(a)(3), the ERISA provision authorizing a

breach of fiduciary duty claim under certain circumstances.

1.  Standing.

This Complaint names only the ERISA plan, the Fund, as a party defendant.  It

cites no authority for the proposition that a plan may be its own fiduciary.  ERISA requires every

plan to "provide for one or more named fiduciaries who jointly or severally shall have authority

to control and manage the operation and administration of the plan."  29 U.S.C § 1102.  A

"person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to

the extent' that he or she 'exercises any discretionary authority or discretionary control

respecting management' of the plan, or 'has any discretionary authority or discretionary

responsibility in the administration' of the plan."  Varity Corp., 516 U.S. at 498 (quoting ERISA

§ 3(21)(A).)  Persons who are not named as fiduciaries in a plan document may nevertheless be

found to have acted as a fiduciary of a plan.  In the absence of controlling authority, it is doubtful

that a plan, here the Fund, may be one of its own fiduciaries.[9]

The failure to name a Plan administrator or other person as a defendant on a

breach of fiduciary duty claim is likely no oversight.  The Plan's assignment provision would not

allow such a claim against a fiduciary and, indeed, the Center's breach of fiduciary duty claim

---

[9] Because it was not raised in the Fund's motion, the Court does not rest its ruling on the issue of whether the Fund may be its own fiduciary.

against the Fund, itself, is prohibited by the Fund's unambiguous anti-assignment provision

which the Court again repeats:

> The assignment feature of the Benefit Fund is only for payment of
> your benefits to providers.  No other rights may be assigned or
> transferred.  There is no further liability for any claim by any
> provider or third party and no such claims may be brought against
> the Benefit Fund.

(2015 SPD at 162; see also id. at 169, 189.)  A claim for failure to pay a benefit stands or falls on

the claim under section 502(a)(2).  While a plan participant would have the ability to assert a

breach of fiduciary duty claim against a plan fiduciary, the anti-assignment provision does not

permit a "provider" such as the Center to assert such a claim against the Fund.

> 2.   Failure to State a Claim.

A plaintiff alleging a claim for breach of a fiduciary duty under ERISA "must

allege that (1) defendants were fiduciaries of the plan who, (2) acting within their capacities as

plan fiduciaries, (3) engaged in conduct constituting a breach of an ERISA fiduciary duty."

Severstal Wheeling Inc. v. WPN Corp., 809 F. Supp. 2d 245, 254 (S.D.N.Y. 2011), aff'd sub

nom. Severstal Wheeling, Inc. v. WHX Corp., 659 F. App'x 28 (2d Cir. 2016) (summary order)

(quoting In re Pfizer Inc. ERISA Litigation, 2009 WL 749545, at *6 (S.D.N.Y. Mar. 20, 2009));

Kokoshka v. Investment Advisory Committee of Columbia University, 19-Civ-10670, 2021 WL

3683508, at *5 (S.D.N.Y. Aug. 19, 2021) (Cronan, J.).  A plaintiff pursuing equitable relief

under section 502(a)(3) must also "establish an underlying violation of the statute."  Gates v.

United Health Group, 11-Civ-3487, 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012)

(Forrest, J.).

Here, the Center alleges violations of the duty of loyalty and duty to avoid self-

dealing.  (ECF 11 ¶¶ 124-25.)  ERISA § 404(a)(1)(A) requires a fiduciary to perform its "duties

with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan.'"  ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); see also Lardo v. Bldg. Serv. 32BJ Pension Fund, 20-Civ-5047, 2021 WL 4198233, at *6 (S.D.N.Y. Sept. 14, 2021) (Cronan, J.) ("ERISA section 404, 29 U.S.C. § 1104, creates fiduciary duties of loyalty and care [and] Section 502(a)(3), 29 U.S.C. § 1132(a)(3), in turn, allows ERISA participants to seek equitable relief in response to violations of those fiduciary duties.").  This duty of loyalty requires that fiduciaries' decisions "must be made with an eye single to the interests of the participants and beneficiaries." Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982).  "To plead a duty of loyalty claim under ERISA, a plaintiff must allege facts showing that a fiduciary acted 'for the purpose of providing benefits to itself or someone else.'" Anderson v. Advance Publications, Inc., 22-Civ-6826, 2023 WL 3976411, at *2 (S.D.N.Y. June 13, 2023) (Torres, J.) (quoting Sacerdote v. NYU, 16-Civ-6248, 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017) (emphasis omitted), vacated on other grounds, 9 F.4th 95 (2d Cir. 2021)).  Additionally, ERISA § 406(b)(1) prohibits fiduciaries from "deal[ing] with the assets of the plan in his own interest or for his own account."  ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); Henry v. Champlain Enterprises, Inc., 445 F.3d 610, 618 (2d Cir. 2006) ("Section 406 of ERISA supplements the general fiduciary obligations set forth in § 404 by prohibiting certain categories of transactions believed to pose a high risk of fiduciary self-dealing.").

        The Center alleges that the Fund violated its duty of loyalty and duty to avoid self-dealing by reducing its payments for the Patient's Procedure(s) "to benefit itself at the expense of the patient."  (ECF 11 ¶¶ 124-25).  It also alleges that "Defendant did not inform [the Patient] that it was not adhering to the [Plan] in calculating payments for medical care provided

by [non-participating providers], such as Plaintiff, but instead was employing a series of procedures and adjustments that were intentionally designed to reduce the amounts Defendant had to pay Plaintiff and other [non-participating providers] and to increase the [Patient's] liability to Plaintiff, often in substantial amount." (Id. ¶ 123.)  The Fund argues that these "vague and boilerplate allegations" fail to allege any conduct that was contrary to ERISA or the terms of the 2015 SPD.  (ECF 14 at 19-20.)  For the reasons that follow, the Court concludes that the Center has failed to plausibly allege a violation of either the duty of loyalty or the duty to avoid self-dealing.

As to the duty to avoid self-dealing, the Center alleges only that the Fund "flagrantly violated" this duty "by reducing payments due patient for services provided by Plaintiff to benefit itself at the expense of the patient." (ECF 11 ¶ 125.)  However, "mere descriptions of adverse benefit determinations do not plausibly allege money being diverted to [the Fund], when the unpaid benefits remain in the employees' self-funded trust." See Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Insurance Co., 14-Civ-2495, 2016 WL 4382709, at *11 (S.D.N.Y. Aug. 16, 2016) (Ramos, J.) (quotations and citation omitted). "Put another way, it is not clear how [allegedly] wrongful claim denials standing alone plausibly allege that [the Fund] acted to enrich its own pockets or those of another party-in-interest." See id.; see also Bush v. Liberty Life Assurance Co. of Boston, 130 F. Supp. 3d 1320, 1329 (N.D. Cal. 2015) ("Plaintiff seeks an expansive reading of section 406 that would render almost any wrongful benefits denial determination by an insurer a prohibited transaction under the statute. Such errors are properly addressed elsewhere in the statute, such as through a claim seeking disability benefits under section 502(a)(1)(B) . . . . The prohibited transactions statute is focused on misuse of plan assets or self-dealing by a fiduciary in connection with its supervisory role

over the plan.  A mere benefits denial determination is not the type of transaction this section

was intended to address.").  The Center has thus failed to plausibly allege any self-dealing by the

Fund.

   The Center's claim that the Center breached its ERISA fiduciary duty of loyalty

also fails because it does not plausibly allege that the Fund acted "for the purpose of providing

benefits to itself or someone else."  See Anderson, 2023 WL 3976411, at *2; Sacerdote, 2017

WL 3701482, at *5; Nicolas v. Trustees of Princeton University, 17-3695, 2017 WL 4455897, at

*3 (D.N.J. Sept. 25, 2017) (dismissing duty of loyalty claim because plaintiff "plead[ed] no facts

suggesting [d]efendant benefitted, financially or otherwise, from any decisions related to the

[p]lans or engaged in disloyal conduct in order to benefit itself or someone other than the [p]lans'

beneficiaries").


IV. The Tenth Claim: ERISA § 502(c)(1)

   The Center purports to assert a claim for relief under ERISA section 502(c)(1),

which imposes the following liability on ERISA plan "administrators":

> Any administrator . . . who fails or refuses to comply with a request
> for any information which such administrator is required by this
> subchapter to furnish to a participant or beneficiary . . . within 30
> days after such request may in the court's discretion be personally
> liable to such participant or beneficiary in the amount of up to $100
> a day from the date of such failure or refusal . . . .

ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B) (emphasis added); 29 C.F.R. § 2575.502c-1

(increasing maximum statutory damage amount to $110 per day); see also Brown v. Rawlings

Financial Services, LLC, 868 F.3d 126, 128 & n.2 (2d Cir. 2017).

   The Center alleges that it requested the Fund's plan documents on or about

January 31, 2020, as part of the first level appeal, and that as of the date of the Center's second

level appeal on or about October 12, 2020, and for some time thereafter, the Fund failed to

disclose its plan documents.  (ECF 11 ¶ 129.)  The Center seeks statutory damages of $110.00

per day, "beginning 30 days after the date of Plaintiff's first request."  (Id. ¶ 130.)

This claim fails because the Fund is not the Plan "administrator."  A section

502(c)(1) plaintiff can only recover statutory damages against a plan "administrator."  Krauss v.

Oxford Health Plans, Inc., 517 F.3d 614, 631 (2d Cir. 2008).  ERISA defines a plan

"administrator" as "the person specifically so designated by the terms of the instrument under

which the plan is operated," or, if no administrator is designated, "the plan sponsor."  29 U.S.C.

§ 1002(16)(A).  Here, the 2015 SPD states that the "Plan Administrator consists of the Board of

Trustees[, which is composed of union and employer trustees,] and its duly authorized designees

and subordinates, including, but not limited to, the Executive Director, the Appeals Committee

and other senior employees."  (2015 SPD at 182-83.)  Since the Fund itself is not designated as

the administrator, the Center cannot recover statutory damages under section 502(c)(1) for the

Fund's alleged failure to disclose requested plan documents.  See Krauss, 517 F.3d at 631;

McFarlane v. First Unum Life Insurance Co., 274 F. Supp. 3d 150, 164-65 (S.D.N.Y. 2017)

(Abrams, J.) (dismissing section 502(c)(1) claim where plaintiff failed to allege defendant was a

plan "administrator"); Viti v. Guardian Life Insurance Co. of America, 817 F. Supp. 2d 214,

233-34 (S.D.N.Y. 2011) (McMahon, J.) (dismissing section 502(c)(1) claim brought against

defendant who was "the insurer and the claims administrator" and not the administrator); Smith

v. Stockwell Construction Co., 10-Civ-608S, 2011 WL 6208697, at *7 (W.D.N.Y. Dec. 14,

2011) (dismissing section 502(c)(1) claim against all defendants except plan administrator).

Furthermore, even if the Center properly brought its claim against the Plan

administrator, it lacks standing to do so.  As previously explained, the 2015 SPD allows for the

30

assignment of benefits to non-participating providers but unambiguously states that "[n]o other rights conferred under the terms of this Plan or ERISA may be transferred or assigned." (2015 SPD at 169, 189.) Accordingly, the Center has failed to plausibly allege that it received a valid assignment of the right to request Plan documents from the Plan administrator or the right to pursue a section 502(c)(1) claim.

V.       State Law Claims

       Having dismissed the Center's three ERISA claims, the Court now turns to the Center's seven state law claims. For the reasons described below, these claims are expressly preempted by ERISA and must be dismissed.

       A.       Overview of State Law Claims.

       The First Cause of Action, labeled "Breach of Contract- preauthorization," alleges that, by virtue of the Preauthorization, the Fund promised to cover the Patient's procedure "in accord with the applicable healthcare plan and per the applicable law" and that the Preauthorization "necessitated reasonable compensation to Plaintiff." (ECF 11 ¶¶ 24-33.) The Center's Second Cause of Action is a promissory estoppel claim. It alleges that the Preauthorization "necessarily included that Plaintiff would be reasonably compensated" and that the Center reasonably and foreseeably relied on the Preauthorization in performing the Procedure(s) for the Patient. (Id. ¶¶ 34-42.)

       The Third Cause of Action alleges that the Fund breached an implied-in-fact contract by failing to reasonably compensate the Center as necessitated by the Preauthorization and as is consistent with the parties' "prior customary practices and business dealings." (Id. ¶¶ 43-54.) The Fourth Cause of Action, "Breach of Contract- assignment," alleges that the Fund's

31

"health care plans at issue in this case state[] that the out-of-network doctors providing health care services should be paid based on reasonable charges or allowed amounts for those services," and that the Center is entitled to receive the full amount demanded as a result of the Assignment of Benefits it received from the Patient.  (Id. ¶¶ 55-67.)  In its Fifth Cause of Action, the Center asserts that, as the third-party beneficiary "of the benefits within the health insurance policies issued by Defendant," the Center "was entitled to receive the full amount of benefits under those plans."  (Id. ¶¶ 68-80.)

Finally, the Center's Sixth and Seventh Causes of Action, for unjust enrichment and quantum meruit, respectively, each allege that the Fund has "wrongfully withheld compensation for the work and labor performed," that the Center is "entitled to receive compensation for its work and labor in accordance with New York law and/or the health insurance policies issued by Defendant to [the Patient]," and that "it is inequitable for Defendant to retain the benefits without paying the fair rate for such services."  (Id. ¶¶ 81-105.)

B.  ERISA Preemption.

There are "two separate, but related, doctrines of preemption applicable to ERISA—so called 'complete preemption' and express preemption."  Chau, 167 F. Supp. 3d at 570; see also Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 238-39 (2d Cir. 2014).  The complete preemption doctrine is "a jurisdictional concept" that allows a plaintiff's state law claim to be recast "as a federal claim for relief making [its] removal [by the defendant] proper on the basis of federal question jurisdiction."  Vaden v. Discover Bank, 556 U.S. 49, 61 (2009) (alterations in original); Wurtz, 761 F.3d at 238; Chau, 167 F. Supp. at 570.  The doctrine is implicated when Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  Metropolitan Life Insurance v. Taylor, 481

U.S. 58, 63-64 (1987).  "Complete preemption" is implied from section 502(a) of ERISA, which the Supreme Court has described as "one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (citing Metropolitan Life Insurance, 481 U.S. at 65-66); Chau, 167 F. Supp. 3d at 570.

By contrast, express preemption "is one of the 'three familiar forms' of ordinary defensive preemption (along with conflict and field preemption)."  Wurtz, 761 F.3d at 238 (quoting Sullivan v. American Airlines, Inc., 424 F.3d 267, 273 (2d Cir. 2005)).  Express preemption "occurs when Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision."  Id. (quotations omitted) (alteration in original) (quoting Arizona v. United States, 132 S. Ct. 2492, 2500-01 (2012)).

The Fund urges that the Center's state law claims are expressly preempted by ERISA.  ERISA's express preemption provides that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute.  ERISA § 514(a), 29 U.S.C. § 1144(a).  The Supreme Court has described this provision as "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern."  Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 46 (1987) (quotations omitted) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 423 (1981)).

"A law 'relates to' an employee benefit plan," such that it is preempted by ERISA, "if it has a connection with or reference to such a plan."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983)).  A state law has an impermissible "connection with" an ERISA plan if it

33

"'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration'" or if "'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'"  Gobeille v. Liberty Mutual Insurance Co., 577 U.S. 312, 320 (2016) (quoting Egelhoff v. Egelhoff, 532 U.S. 141, 148 (2001) and N.Y.S. Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645, 668 (1995)).

A state law has "reference to" an ERISA plan where it "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation."  Id. at 319-20 (citation omitted).  The Supreme Court has held that a state law claim makes "reference to" an ERISA plan and is preempted when the existence of an ERISA plan "is a critical factor in establishing liability" under the state cause of action and where "the court's inquiry must be directed to the plan."  Ingersoll-Rand, 498 U.S. at 139-40.

The Second Circuit has observed that "laws that have been ruled preempted [by ERISA] are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee.'"  Aetna Life Insurance Co. v. Borges, 869 F.2d 142, 146 (2d Cir. 1989).  ERISA also preempts state common law claims that seek "to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA."  Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 114 (2d Cir. 2008) (quoting Davila, 542 U.S. at 214).

Each of the Center's seven state law claims "relate to" an ERISA plan and are expressly preempted.  They each explicitly reference the Plan itself or the Preauthorization, which was required by the terms of the Plan.  (ECF 11 ¶¶ 27-28, 30-31, 35-38, 41, 46-47, 56-59,

62-64, 71-73, 76, 89-90, 102.)  And each seeks the same relief as the Center's ERISA claims: reimbursement of the full cost of the services provided.  (ECF 11 ¶¶ 32-33, 42, 53-54, 67, 80, 88, 92-93, 101, 104.)  "All of the claims, therefore, represent transparent attempts to pursue alternate routes to challenge the denial of . . . benefits under the Plan outside of the statutory mechanism established in ERISA."  See Chau, 167 F. Supp. 3d at 572.

        The Center's first and second claims are, in the Center's own words, premised on the Preauthorization.  (ECF 15 at 22.)  The Preauthorization, which was required by the terms of the 2015 SPD, does not give rise to a legal obligation independent of the plan.  See, e.g., Neuro Surgery v. Aetna, 511 F. Supp. 3d at 289 ("The 'pre-authorization, pre-certification, or other requirements' provided to Aetna before [p]laintiff rendered 'medically necessary, covered health care services' do not create a legal duty independent of ERISA. . . .  Indeed, the source of those 'pre-authorization[s], pre-certification[s], or other requirements' is an ERISA plan." (citation omitted) (alterations in original)); Neurological Surgery, P.C. v. Siemens Corp. ("Neuro Surgery v. Siemens"), 17-Civ3477, 2017 WL 6397737, at *5 (E.D.N.Y. Dec. 12, 2017) ("It appears that [plaintiffs] base their contractual and quasi-contractual theories on the [d]efendant's pre-authorization. . . .  Courts have expressly rejected this argument.").  The Amended Complaint itself concedes that the Preauthorization only "promised to cover [the Patient's] procedure in accord with the applicable healthcare plan and per the applicable law."  (ECF 11 ¶ 27 (emphasis added).)  Because these claims are directly dependent on an ERISA plan, they are preempted.[10]

_____

[10] See, e.g., East Coast Advanced Plastic Surgery v. Aetna Inc., 18-Civ-9429, 2019 WL 2223942, at *3 (D.N.J. May 23, 2019) (breach of contract, promissory estoppel, account stated, and quantum meruit claims based on a preauthorization letter were expressly preempted); Star Multi Care Services, Inc. v. Empire Blue Cross Blue Shield, 6 F. Supp. 3d 275, 287 (E.D.N.Y. 2014) ("[T]he complaint . . . does not allege facts to support an independent contractual obligation, but instead states that Empire 'provided authorization' for plaintiff's services.  An 'authorization' plainly implicates coverage and benefits determinations . . . ." (citation omitted)); Advanced Orthopedics & Sports Medicine Institute, P.C. v. Oxford Health Insurance, Inc., 21-Civ-17221, 2022 WL 1718052, at *4-5 (D.N.J. May 27, 2022) (breach of implied contract, breach of warranty of good faith and fair dealing, promissory estoppel, and unjust enrichment claims premised on a preauthorization were expressly preempted);

Even if the Preauthorization could give rise to an obligation independent of the plan, it does not contain a promise to pay the full cost of services provided by the Center.  It states in clear terms that it is "not a guarantee of payment," that payment to a non-participating provider will be made "at the Fund's allowance," and that the Patient "will be personally responsible for the balance of the hospital bill that exceeds the Fund's Schedule of Allowances." (ECF 13, Ex. B.)  It does not, as the Center alleges, state or "necessarily include[]" that a non-participating provider will be "reasonably compensated."  (See ECF 11 ¶¶ 9-10, 28, 37, 41.)

The Center contends that finding its first two claims expressly preempted by ERISA would be inconsistent with McCulloch.  (ECF 15 at 22-23.)  But McCulloch is readily distinguishable.  In that case, the Second Circuit held that an out-of-network provider's state law promissory estoppel claim against Aetna was not completely preempted because it "d[id] not implicate the terms of the plan" and was instead based on an "independent and distinct" obligation arising out of an Aetna representative's oral statements during a phone call with the provider.  857 F.3d at 150-52.  The Second Circuit explained that the provider placed the phone call "for his own benefit to decide whether he would accept or reject a potential patient" and that the call "was not in furtherance of an ERISA plan."  Id. at 150-51.  Additionally, the provider was "not a valid assignee of the plan, he had no preexisting relationship with Aetna, and he was not required by the plan to pre-approve coverage for the surgeries that he performed."  Id.  Here, however, the Center has not alleged a duty arising out of oral statements by a Fund representative, the 2015 SPD required preapproval of the Patient's Procedure(s), and the Center

---

Atlantic Shore Surgical Associates v. United Healthcare/Oxford, 18-Civ-9506, 2019 WL 1382103, at *4 (D.N.J. Jan. 23, 2019) (breach of contract and promissory estoppel claims were preempted because "the Court here cannot analyze [p]laintiffs claims without referencing the plan, as each claim is based on a purported preauthorization which was premised on the existence of an ERISA plan, and [p]laintiff argues that this preauthorization itself entitles it to 'fair and reasonable rates' for medical services"); Fast Access Specialty Therapeutics, LLC v. UnitedHealth Group, Inc., 532 F. Supp. 3d 956, 964-71 (S.D. Cal. 2021) (breach of contract, promissory estoppel, and unjust enrichment claims premised on "preapprovals" were expressly preempted by ERISA).

in fact relies on its status as an assignee of the Patient's benefits in asserting other claims, particularly its First Cause of Action for recovery of benefits under ERISA § 502(a)(1)(B) and its Fourth Cause of Action alleging breach of contract based on the Assignment of Benefits.  Thus, the Court's conclusion that the Center's first two claims are preempted is not inconsistent with McCulloch.

The Center also relies on Plastic Surgery Center, P.A. v. Aetna Life Insurance Co., 967 F.3d 218 (3d Cir. 2020).  There, the Third Circuit held that a provider's breach of contract and promissory estoppel claims were not expressly preempted because they sought to enforce obligations independent of an ERISA plan.  Plastic Surgery Center, 967 F.3d at 231-233.  Unlike in this case, however, there was "no coverage under the plans for services performed by an out-of-network provider," "no obligation for Aetna to pay the [plaintiff] for its services, and no agreement that compensation would be limited to benefits covered under the plan."  Id. at 231.  Also unlike this case – but like McCulloch – the plaintiff alleged oral statements by an Aetna employee that "plausibly support[ed] the inference that Aetna agreed to pay for all component services of [the patient's] surgery at the highest in-network level."  Id. at 232; id. at 233 ("[A]s alleged, it is Aetna's oral offers or oral promises (as the case may be) rather than the terms of the plan that define the scope of Aetna's duty . . . .").  Thus, neither McCulloch nor Plastic Surgery Center supports the Center's position.  See Advanced Orthopedics, 2022 WL 1718052, at *6 (distinguishing Plastic Surgery Center and stating, "In this case, not only are there no allegations of oral promises to pay a certain amount, but the pre-authorization letter unequivocally states that 'approval does not guarantee payment' and that further assessment will take place to determine whether the service codes are 'eligible for payment.' . . . Thus, in contrast to the insureds in Plastic Surgery Center, here, 'the scope of coverage, as well as

payment, would be limited to the terms of the plans—leaving open the possibility that some services would not be compensated at all'").[11]

   The third claim, for breach of an implied-in-fact contract, is based on the Preauthorization as well as the parties' "prior customary practices and business dealings." (ECF 11 ¶¶ 46-47, 50-51.)  Insofar as it is premised on the Preauthorization, it is preempted for the reasons just described.  The Center also alleges, however, that "it is the parties' usual and customary practice that Defendant reasonably compensates Plaintiff." (Id. ¶ 51.)  But even taking the Center's allegations as true and viewing them in the light most favorable to the Center, they do not plausibly suggest any agreement, obligation, or prior practice independent of the ERISA plan itself.  The Amended Complaint explicitly alleges that the parties' prior dealings occurred in the context of the Center's "provi[sion of] healthcare services to [a] patient under a policy issued, funded or administered by Defendant," "particularly . . . when Defendant preauthorize[s] the treatment." (Id. ¶ 50.)  Though it alleges that the Fund "has properly paid Plaintiff" in the past (id. ¶ 51), it does not allege that such payment ever deviated from the terms of the Plan or the amount set forth in the Schedule of Allowances.  This claim is expressly preempted.

   The fourth and fifth claims unquestionably relate to an ERISA plan, and the Center has not attempted in its opposition to argue otherwise.  The fourth claim is premised on

---

[11] The Center also points to Florida Emergency Physicians Kang & Associates, M.D., Inc. v. United Healthcare of Florida, Inc., 526 F. Supp. 3d 1282 (S.D. Fla. 2021), and Emergency Services of Oklahoma, PC v. Aetna Health, Inc., 556 F. Supp. 3d 1259 (W.D. Okla. 2021).  Those cases held that the plaintiff's state law claims did not "relate to" ERISA plans because the state laws did not differentiate between ERISA and non-ERISA plans, and the relevant state statute and common law causes of action "all have force and operate independently of the existence of any ERISA plans."  Florida Emergency, 526 F. Supp. 3d at 1298; see also Emergency Services, 556 F. Supp. 3d at 1264 ("[T]he common law claims of implied-in-fact contract and unjust enrichment do not 'relate to' ERISA plans such that ERISA preempts [p]laintiffs' claims.  Neither of these doctrines directly refer to ERISA plans nor do they differentiate between ERISA and non-ERISA plans.").  These thinly reasoned cases are not persuasive in light of those within this Circuit concluding that claims based on the same common law causes of action were expressly preempted.

the Assignment of Benefits, which occurred as a direct result of the Plan provisions that allow members to assign their benefits to non-participating providers.  Any alleged duty arising out of the Assignment of Benefits is therefore not independent of the Plan.  See Murphy Medical Associates, LLC v. Yale University, 22-Civ-33, 2023 WL 2631798, at *9 (D. Conn. Mar. 24, 2023) (dismissing breach of contract claim as preempted by ERISA because the claim "presupposes a valid assignment of contract rights" and "does not seek to rectify a violation of any legal duty independent of ERISA").

The fifth claim for relief alleges that the Center was the intended beneficiary of the benefits within the Plan.  "The claim clearly 'relates to' the Plan, as it is premised on the existence of the Plan—in other words, the existence of the Plan is a 'critical factor in establishing liability' and there 'simply is no cause of action if there is no plan.'"  Nathaniel L. Tindel, 2023 WL 3318489, at *8 (quoting Plastic Surgery Center, 967 F.3d at 230).  Indeed, the fourth and fifth claims repeatedly reference the Plan itself (e.g., "Each insurance policy at issue in this case contains contractual provisions . . . ," "Defendant's health care plans at issue in this case state[] . . . ," "the proper amounts under the applicable health care plan," "Plaintiff and its patient have fully performed their obligations and conditions precedent under Defendant's applicable health care plans . . . ," "Plaintiff . . . was the intended beneficiary of the benefits within the health insurance policies issued by Defendant"), (ECF 11 ¶¶ 56-59, 64, 70-73, 76, 78), and even concede that the Center is seeking benefits under the applicable plan, (id. ¶¶ 59, 62-63, 66, 77, 80).

Finally, the sixth and seventh claims for unjust enrichment and quantum meruit, respectively, assert that the Center should be paid the "reasonable charges" for its services and that it is inequitable for the Fund to retain the benefits conferred by the Center, i.e., the services

performed for the Patient, without paying the fair rate for such services.  Both claims, seek

compensation for services performed "in accordance with the applicable health insurance

policies," are preempted.  (Id. ¶¶ 90, 102.)

   "To prevail on a claim for unjust enrichment in New York, a plaintiff must

establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and

good conscience require restitution."  Beth Israel Medical Center, 448 F.3d at 586 (quoting Kaye

v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)).  And "[i]n order to recover in quantum meruit

under New York law, a claimant must establish '(1) the performance of services in good faith,

(2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of

compensation therefor, and (4) the reasonable value of the services.'"  Mid-Hudson Catskill

Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (quoting

Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000)).  "Under New York law,

unjust enrichment and quantum meruit claims are analyzed together as a single quasi-contract

claim."  International Technologies Marketing, Inc. v. Verint Systems, Ltd., 991 F.3d 361, 365

n.1 (2d Cir. 2021) (emphasis removed) (citing Mid-Hudson Catskill Rural Migrant Ministry, 418

F.3d at 175).

   When "a healthcare provider claims unjust enrichment against an insurer, the

benefit conferred, if any, is not the provision of the healthcare services per se, but rather the

discharge of the obligation the insurer owes to its insured."  Nathaniel L. Tindel, 2023 WL

3318489, at *7 (quoting Plastic Surgery Center, 967 F.3d at 240 (internal footnote omitted)).

And "when the insured is a plan participant, the 'contractual obligation' is none other than the

insurer's duty to its insured under the terms of the ERISA plan."  Plastic Surgery Center, 967

F.3d at 241.

Thus, the sixth and seventh claims are preempted because they "would require the Court to find that 'an ERISA plan exists' in order to demonstrate that [the Fund] 'received a benefit' and that retention of that benefit without payment would be unjust.'" Nathaniel L. Tindel, 2023 WL 3318489, at *7 (quoting Plastic Surgery Center, 967 F.3d at 241-42); see, e.g., Neuro Surgery v. Siemens, 2017 WL 6397737, at *5 (unjust enrichment claim expressly preempted because it sought "to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and [did] not attempt to remedy any violation of a legal duty independent of ERISA" (quotations omitted)); Murphy Medical Associates, 2023 WL 2631798, at *8 (unjust enrichment claim expressly preempted because it was "premised upon [the defendant's] failure to pay for the services provided by ERISA plans and therefore necessarily relates to the 'denial of benefits promised under ERISA-regulated plans'").

The Center argues that its sixth and seventh claims are not expressly preempted because the plan is not a "critical factor to establish liability" and only the "amount of payment is pegged to the terms of the plan."[12]  (ECF 15 at 23 (quoting Atlantic Neurosurgical Specialists, P.A. v. Multiplan, Inc., 20-Civ-10685, 2022 WL 158658, at *5 (S.D.N.Y. Jan. 18, 2022) (Stanton, J.).)  In Neuro Surgery v. Aetna, the court articulated the distinction between "amount of payment" claims and "right to payment" claims.  "'Amount of payment' claims concern 'the computation of contract payments or the correct execution of such payments . . . [and] are typically construed as independent' of ERISA." 511 F. Supp. 3d at 291 (quoting Montefiore Medical Center v. Teamsters Local 272, 642 F.3d 321, 331 (2d Cir. 2011)) (alteration in original).  "In 'amount of payment' claims, 'the basic right to payment has already been

---

[12] Though the Center appears to raise this argument with respect to its "equity claims," (see ECF 15 at 23), it does not limit its analysis to those claims.  To the extent the Center intended to raise this argument as to all of its state law claims, the Court would reach the same conclusion.

established and the remaining dispute only involves obligations derived from a source other than the' ERISA plan."  Id. (quoting Montefiore Medical Center, 642 F.3d at 331).  By contrast, "right to payment" claims are construed as claims for benefits that can be brought under ERISA because they "implicate coverage and benefits established by the terms of the ERISA plan."  Id. (quoting Montefiore Medical Center, 642 F.3d at 331).

The Center's claims are "right to payment" claims because they derive from rights created under the ERISA plan and they demand more than a mere cursory review of the plan terms.  As explained by the court in Enigma Management Corp. v. Multiplan, Inc., "[i]n a literal sense the parties disagree on the amount that [the Fund] is required to pay on [the] claims, but they only disagree because [the Fund] asserts that [the Center] does not have the right to full payment under the terms of the ERISA plan."  994 F. Supp. 2d 290, 300 (E.D.N.Y. Jan. 27, 2014); see also North Shore-Long Island Jewish Health Care System, Inc. v. MultiPlan, Inc., 953 F. Supp. 2d 419, 443 (E.D.N.Y. 2013) (concluding that unjust enrichment and quantum meruit claims failed to establish an independent duty, and were thus completely preempted, because "any determination of payment rates in this case will require a review of the [p]lan to determine the applicable rate for a nonparticipating provider for untimely or unpaid claims, which, in turn, will require a review of the [p]lan's provisions on coverage and benefits for such providers").

C.  The Center's Inadequate Network and WHCRA Arguments.

The Center argues that its state law claims are not expressly preempted by ERISA because they depend on obligations arising out of (1) the Fund's "failure to have an adequate network of participating providers to perform the services at issue," (2) the Fund's "statements in its [P]reauthorization (outside of the ERISA plan)," and (3) "the federal law mandating coverage for these services," i.e., the Women's Health and Cancer Rights Act of 1998 ("WHCRA").  (ECF

15 at 22; see also ECF 11 ¶ 12 ("Upon information and belief, Defendant's network is inadequate for services at issue, necessitating the patient to utilize the Plaintiff as the medical procedure is highly complex and requires a high trained and competent surgeon that did not exist in Defendant's network.").)  The Court has already rejected the argument that the Preauthorization exists "outside of the ERISA plan."  The Court now rejects the remainder of the Center's arguments for the reasons that follow.

The Center has not plausibly alleged that the WHCRA creates a duty requiring the Fund to reimburse the Center for the full cost of the services provided.  The WHCRA provides in relevant part:

> A group health plan, and a health insurance issuer providing health insurance coverage in connection with a group health plan, that provides medical and surgical benefits with respect to a mastectomy shall provide, in a case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for—
>
> > (1) all stages of reconstruction of the breast on which the mastectomy has been performed;
> >
> > (2) surgery and reconstruction of the other breast to produce a symmetrical appearance; and
> >
> > (3) prostheses and physical complications of mastectomy, including lymphedemas;
>
> in a manner determined in consultation with the attending physician and the patient.  Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage.  Written notice of the availability of such coverage shall be delivered to the participant upon enrollment and annually thereafter.

29 U.S.C.A. § 1185b(a).  It also states that "[n]othing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from

negotiating the level and type of reimbursement with a provider for care provided in accordance with this section." Id. § 1185b(d).

In Krauss v. Oxford Health Plans, the Second Circuit held the WHCRA only requires group health plans to cover breast reconstruction surgeries "in a manner 'consistent' with the policies 'established for other benefits under the plan.'" 517 F.3d at 625 (rejecting argument that, under the WHCRA, the relevant ERISA plan was obligated to provide full reimbursement for the patient's bilateral reconstructive surgery). Relying on Krauss to dismiss a section 502(a)(1)(B) claim under Rule 12(b)(6), the District Court for the District of New Jersey in Prestige Institute for Plastic Surgery, P.C. v. Keystone Healthplan East explained that "there is nothing in the [WHCRA] that bars the application of lower reimbursement rates for breast reconstruction surgery performed by out-of-network providers." CV 20-496, 2020 WL 7022668, at *9 (D.N.J. Nov. 30, 2020).

The 2015 SPD explains that the Fund "complies with federal law related to mastectomies." (2015 SPD at 75.) Specifically, "[i]f a member or dependent has a mastectomy and then chooses to have breast reconstruction, the Benefit Fund . . . will provide coverage based upon the Benefit Fund's Schedule of Allowances for" the services specified. (Id.) The 2015 SPD therefore provides coverage for breast reconstruction surgeries "in a manner consistent with the policies established for other benefits under the plan." See Krauss, 517 F.3d at 625 (quotations omitted). Thus, on its face, the 2015 SPD complies with the WHCRA, and the Center has not presented factual allegations to support a different conclusion.

The Center also has not provided any factual or legal support for its assertion that the Fund's alleged failure to maintain an adequate network of participating providers gives rise to a duty, independent of ERISA, to reimburse the Center in full.

44

VI.    <u>Leave to Amend Is Denied.</u>

        The Center seeks leave to amend in the event of dismissal.  For the reasons that follow, leave to amend is denied.

        "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend.  A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). Leave to amend is futile if the plaintiff's "proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." <u>Panther Partners Inc. v. Ikanos Communications, Inc.</u>, 681 F.3d 114, 119 (2d Cir. 2012).

        "[A] district court is under no obligation to grant leave to amend when the plaintiff offers merely conclusory assertion[s] that amendment would cure a complaint's deficiencies and fail[s] to disclose what additional allegations [he] would make which might lead to a different result." <u>Abe</u>, 2016 WL 1275661, at *11 (quotations omitted) (alterations in original) (quoting <u>Horoshko v. Citibank, N.A.</u>, 373 F.3d 248, 249 (2d Cir. 2004)).  "The Second Circuit has consistently held that district courts may deny leave to amend when a plaintiff requests such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without offering any justification or attaching a proposed amended pleading." <u>Cinema Village Cinemart, Inc. v. Regal Entertainment Group</u>, 15-Civ-05488, 2016 WL 5719790, at *7 (S.D.N.Y. Sept. 29, 2016), <u>aff'd</u>, 708 F. App'x 29 (2d Cir. 2017) (citing cases).

        Here, the Center requests leave to amend its ERISA claims in the event of dismissal.  (ECF 15 at 13, 15-17.)  However, it does so in a largely cursory and perfunctory

fashion, and does not identify the content of any amendment that would not be futile.  It does not seek to replead its state law claims, but granting leave to amend those claims would nevertheless be futile, as the Center would be unable to assert claims not expressly preempted by ERISA.

At the initial conference before the Court, the Court granted the Center leave to file an amended complaint provided it did so within fourteen days.  (Minute Entry, Sept. 19, 2022.)  The Center availed itself of that opportunity.

As to the eighth claim (ERISA § 502(a)(1)(B)), the Center does not explain how an amended pleading would cure its failure to identify specific plan provisions entitling it to relief or otherwise state a claim under section 502(a)(1)(B).  It also has not endeavored to explain how it would amend its claim to allege exhaustion of administrative remedies.  Instead, it argues that "[t]he plan specifically provides benefits for these services."  (ECF 15 at 13.)  The 2015 SPD indeed provides coverage for services performed by non-participating providers – but only in accordance with the Schedule of Allowances.  The Center has not shown that a further amended complaint would identify any plan provision entitling it to any amount other than that which the Fund already paid.

The Center also contends, as part of its request for leave to amend its section 502(a)(1)(B) claim, that the Fund's "network was inadequate in that it did not have a participating provider available to render the applicable services to the patient."  (ECF 15 at 13.) It asserts, in less than clear terms, that the "[P]lan specifies that it complies with the applicable federal law regarding mastectomies and breast reconstruction, though it wrongly refers to its Schedule of Allowances, which provides illusory coverage, forcing the patient to absorb 99% of the procedure even though its network was inadequate."  (Id.)  In essence, the Center appears to argue that its amended pleading would allege that the Center should be reimbursed in full

pursuant to section 502(a)(1)(B) because the Plan terms, as they are, do not comply with "the applicable federal law regarding mastectomies and breast reconstruction," i.e., the WHCRA. Such an amendment would be futile because, for the reasons stated above, the Center has not demonstrated any violation of the WHCRA.

Finally, granting leave to amend the ninth and tenth claims would be futile because the Center has not shown that it would be able to allege it has standing to bring those claims and, as to the ninth claim, that the Fund breached a fiduciary duty.

CONCLUSION

The Fund's motion to dismiss is granted as to all claims and leave to amend is denied.

The Clerk is respectfully requested to terminate the motion, (ECF 13), enter judgment for the Fund, and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
         September 13, 2023

47